Good morning, Your Honor. Again, James Nielsen for the Appellant United National Insurance Company. This is a case in which the district court found that my client, United National, owed a duty to defend the Appley Edwards Theaters in connection with an underlying lawsuit brought by IMAX Corporation relating to the use of IMAX's trademark name in advertisements that Edwards used to promote showings of various movies in certain of its theaters. There were four distinct grounds under which the district court found potential coverage existed and therefore a duty to defend. Two of those grounds have been abandoned by the Appley on appeal, those being disparagement of services or products and also infringement of trade dress. I believe the Appley correctly abandoned those theories on appeal, and I'm not going to spend the time. I'd like to focus specifically on the two grounds that have been argued and remain. The first one is infringement of IMAX's slogan in Edwards's advertisements. Again, this is one that has been briefed, although I think the issue is resolved fairly neatly by the California Supreme Court's decision in Palmer v. Truck Insurance Exchange in which in, I dispose of a virtually identical argument by pointing out that a slogan is a phrase and that use of a trademark name in a slogan simply does not constitute infringement of that slogan and therefore cannot trigger the potential for liability under an insurance policy. That leaves us with the fourth. You argue in the reply brief that the principle of Palmer doesn't apply because the single word trademark, IMAX, is not an attention-getting phrase. Sounds to me like a factual proposition I'm not sure I'm prepared to agree with. IMAX is a fairly distinctive word. It's not a geographic location or anything else. Couldn't that qualify as a slogan? No, it can't, Your Honor. I mean, the the the Under no circumstances. Under no circumstances can the word IMAX qualify as a slogan, and I think Palmer is fairly clear. Why is that? Because a slogan is a phrase. A slogan is a collection of words that expresses some sort of concept. Can't a single word accomplish the same effect or result? No, it really can't. What about Google? Excuse me, Your Honor. What about Google? I don't think so, Your Honor. Specifically, Palmer addressed that because it pointed out that the word IBM, which is similarly evocative as Google, we all know what IBM means, what it stands for, what sort of products it deals with. Has been? Excuse me? Stands for has been. In some views, a word like Google starts to take on all kinds of I mean, I Googled it up and I mean, it's it's sort of creeps way past its simple identification of a commercial enterprise. That may be true, Your Honor. Nonetheless, it does. It does not involve a collection of words that would express some sort of attention. It can't be a slogan in one word. It has to be a collection. No collection. We don't care what the word is, what people understand it to be. It can't be a slogan. That's your argument. That is correct. And I'd also add, Your Honor, that IMAX, just to address your specific comment, IMAX, I don't think has risen to the level of Google. Google is something that at this point dominates our society. I think what's IMAX stand for? IMAX stands for big screens. I think going to movies with a great big screen. I think I've been to one in my life with my kids, but it's not the day to day experience that most of us deal with. So I don't think it'd be fair to say that IMAX even rose to that particular. Now we arrive at your weakest argument. Advertising. Yes, Your Honor. It is the one that is the subject of the most debate. And obviously, the district court, I believe, would have relied on the LaBasse case, as Appley has done on appeal. LaBasse addressed a prior form of the advertising language that we're dealing with here, specifically misappropriation of advertising ideas or style of doing business. And in that context, and the court was very specific about the contextual nature of its analysis. But in that context, the court did conclude that the phrase advertising ideas could encompass or advertising ideas could encompass infringement of trademark. And if this court were to say that LaBasse is controlling here on that point under this different language, then potential coverage would be found under that particular provision. Unless, of course, the court found an exclusion applied. And that's a separate subject on that particular point, though. We have taken some pains, and I think correctly so, to highlight the distinctions between the language at issue in LaBasse and the changes made later. A key to the decision in LaBasse is its extensive discussion of the phrase misappropriation. Indeed, in its summation of its reasoning, the LaBasse court pointed out that misappropriation almost standing alone could encompass trademark infringement. And that it pointed out, and I think correctly, an advertising idea can, pardon me, that a trademark can constitute part of an advertisement. This is important because the normal and statutory basis for trademarks is an identification function. Yes, they are typically used in advertisements. They are often used in advertisements. But as the LaBasse court emphasized, they tend to be part of the advertisement. And it's sort of close enough in the context of this word misappropriation that by itself could almost constitute infringement of trademark that he's going to, the court went back and said this is something that a layperson would look at and believe constituted infringement of trademark, would include that and would expect that its insurance company would defend it for a claim based on infringement of trademark. The two main distinctions here, Your Honor, is that the phrases which caught the court's eye in LaBasse are no longer in this policy. It does not include the word misappropriation, which is so, was so closely tied to infringement, wrongful taking in the reasoning of LaBasse. And more importantly, Your Honor, there is a separate and specific coverage just one line down in the policy for infringement of trade dress. If we were to conclude that use of an advertising idea included use of trademark in the policyholder's advertisement as a basis for coverage, we would render that specific and separate coverage immediately beneath it for trade dress infringement to be pure surplusage. Well, you're also suggesting that we should read that amendment as if it included the exclusion in the amendment as if it included the word trademark? I'm not sure I understand what you're saying. Because the exclusion makes reference to trade dress, we ought to read that to say, well, it must also mean to exclude trademark, too. Now, Your Honor, the exclusion, the policy does not exclude trade dress. It covers trade dress. The next line down in the list of definitions of defined offenses right after use of an advertising idea is infringement of copyright title, trade dress and something else. So it's an express grant of coverage. The policy does cover infringement of trade dress that occurs in the policyholders advertisement. Or any other trade dress, Cline? Once again, Your Honor? Or any other trade dress, Cline? No, I believe it's specifically in the policyholders advertisement, Your Honor. That's the language in the definition. So the trade dress actually has to appear in something that qualifies as a defined advertisement, a notice in the broadcaster press media that shows the elements of the trade dress that's being infringed. This clarifies some earlier points of LaBasse which are not particularly relevant to this case. But does suggest there is a specific coverage for a range of trademark-type infringements. And the California case law is fairly clear that the term trademark is used in insurance policies, broadly does include trade name, service mark, trade dress and so forth. And that was even in the context of exclusions in the Aloha Pacific case. So it's something that's fairly well established as a matter of California law. And again, to read the term advertising idea to encompass trademark would render that coverage entirely unnecessary. That language down there would be completely subsumed within the language immediately above it. The other aspect to this same coverage is that, again, the infringement has to, pardon me, the liability of the policyholder has to be because of this sort of infringement in an advertisement. We also suggest that this is not satisfied in this particular case because there was nothing about the advertisements per se that Edwards put in the Los Angeles Times or elsewhere. Advertising that it was going to show movies on IMAX screens that actually caused it to become liable or caused it to become sued. The substance of the allegations asserted by IMAX against Edwards is that IMAX was a licensor or a lessor. Pardon me. And that Edwards was its customer for all these IMAX related products and configurations of its theaters and so forth. Obviously Edwards had the right to use and advertise the IMAX screen that it was leasing from IMAX. The problem was that when the customers went and saw the movies that were not IMAX quality movies at this screen, on these screens, IMAX believed that its reputation was being damaged because it had such a high standard for the quality of movies that were to be shown in its theaters or theaters bearing its name. That customers would think that this was a substandard product. That's a legitimate concern, isn't it? It is a legitimate concern. It ultimately did not play out in the bankruptcy court and the adversary proceeding. But yes, it's a fair legitimate concern. And companies are very worried about that. I know of many circumstances where you have knockoff products that ruin the original product. Perfectly reasonable. Customers get mad. They can't tell the difference. And all of a sudden the quality, which is what you're after in a situation like this, isn't viewed as quality. Perfectly reasonable concern, Your Honor. And that's the injury they were claiming that was arising out of the advertising. Ah, that's that's where we that's where we differ, Your Honor, because under under this court's own reasoning in the Cahill case, as well as the California reasoning, California court's reasoning and excuse me, Your Honor, I forgot the name of this case we cited right next to Cahill in our briefs. The the injury has to arise from the advertisement itself with no further conduct. If, in fact, Edwards had put these advertisements in the Los Angeles Times and come see a movie and lovely IMAX 2D. And in fact, someone came to the theater and it was a proper movie. I mean, it was a proper presentation of an IMAX movie or they simply just didn't put on what they said they were going to put on. It would not have affected IMAX's reputation. Wouldn't IMAX have an infringement claim right there? I mean, IMAX goes ahead and closes the circle by saying, and we have this injury to our reputation because customers will be confused by this inferior product, which will associate with us. But don't they have a claim as soon as the ad is placed because it's not an IMAX 2D movie? I don't believe so, Your Honor. If I sell a counterfeit Louis Vuitton bag that's very high quality, but it's not Louis Vuitton, doesn't Louis Vuitton have a claim as soon as I offer that bag up for sale? Mike, Your Honor. Well, then why doesn't IMAX have a claim as soon as the ad is placed? Because because Edwards had the right to use the ad. No, Edwards had no right to use IMAX 2D in connection with a film that was not an IMAX film. They certainly had the right to say, we've got an IMAX theater. And they may have had the right to say, we're showing this film in our IMAX theater. But I can't imagine how they had a right to say Jurassic Park is in IMAX 2D. There's no way, Your Honor, that a customer would know which movies are specifically designed on 70 millimeter, specifically for IMAX screens, as opposed to other movies that are 35. If I'm selling a bag that's got Louis Vuitton's trademark all over it, but it's not a Louis Vuitton bag, customer may not be able to tell the difference. Louis Vuitton still has a claim. Why isn't that true here? And if it is true, then the cause of action for IMAX arises as soon as the ad is placed, regardless of the quality of the film. Although IMAX, that's not what IMAX pleaded. That's not that's that's not the nature of the damage that IMAX claimed. Your position that it's not until they sell the fake bag that you actually have the injury, the ad itself doesn't create the injury? Yes, that is. If you have an ad for a fake Louis Vuitton bag, nobody buys the bag. That wouldn't be an injury. I think that's true. That would be the analogy here, Your Honor. I think it's actually stronger. What if the monster were enjoying the advertisement before the damage was done? You'd say no duty to defend because there hasn't been any damage yet? Correct, Your Honor. I don't believe I don't believe there would have been any suit in that case. And I say that. The duty to defend is awfully broad. It is awfully broad. Part of the problem with Palmer, it's not a duty to defend case. It's a contribution case. Except, Your Honor, Palmer Palmer specifically addresses how you interpret the policy and what the policy means. It wasn't a question of. An advertisement from Company A says Company B's products will kill you. Company B can't do anything about it until somebody gets killed. The advertisement there by itself caused the injury, Your Honor, because the advertisement contained the information which caused customers to react negatively to the. You're slicing awfully thin on a concept called duty to defend, which seems to be designed under California law to sweep you in unless it's clear to everybody with an IQ over room temperature that you're not involved. California is wild on that, you know. I disagree, Your Honor. I disagree, Your Honor. Even though the case is sort of weak. I mean, that's kind of the way you can read California law. It's not a question of whether the case is weak, Your Honor. It's a question of whether the nature of the claim that's being asserted is one that falls within the policy coverage. In this particular instance, IMAX did not allege that it was injured by the mere use of. How do they stop you from using. If you're IMAX, how do you stop somebody from using IMAX that they're not entitled to use them? Oh, I think I think if if some non lessee licensee started using the name IMAX in any sort of advertisement or in any sort of promotion or in any way, my guess is that IMAX would be all over him with injunctions. In this particular case, they specifically alleged that Edwards is one of their customers, one of their lessees for whom they supply all this proprietary information. You'd have no duty to be involved in a situation like that.  Pardon me. No, we would not, because the policy doesn't cover infringement of trademark. So that's a that's a fundamental question. I was talking about the advertising issue. If it was a cover defense, if it was one of the listed offenses and it was in that advertising, yes, it would. If someone was using trade dress of a of a competitor in the policyholders advertisement, of course, there would be a duty to defend and probably even a duty to indemnify. You have about four minutes left. Do you want to save it for a bottle? I do, Your Honor. Thank you. Good morning again. Sheldon Eisenberg for Edwards Theaters. Let me, thanks to Judge Trott, go to Unix weakest argument first, which is the trademark infringement claim. Essentially, to reverse the district court's decision in this case, this court has to find that LaBasse fashion does not apply in this particular situation. I think that's something that this court could not reasonably find in light of the fact that LaBasse clearly found that the language misappropriation of an advertising idea encompasses trademark infringement claims. The only difference in this policy is that the word misappropriation has now been substituted with the word use. So we now have use of another's advertising idea. The style of doing business phrase was dropped, but the LaBasse court found that those two phrases were interchangeable. The only other difference that Mr. Nielsen points to on this appeal is that the new policy that Edwards had, but which was not involved in the LaBasse fashion case, did not have a specific coverage inclusion for trade dress infringement. Edwards' policy did have coverage for trade dress infringement. It's pretty significant. You say only, but it's a pretty crucial fact. Well, I don't think so, Judge Kuczynski, because that means that... I think so. Why don't you do it in other ways? It's because trade dress infringement claims are not the same as trademark infringement claims. Trade dress is a subset of trademark, and by including trade dress, they must have excluded all other parts of trademark. I mean, it's pretty standard contract law. Your Honor... If they meant to include all of trademark, they would have said trademark. They said trade dress. That's right. But they were writing the policy in 1998 in the context of the California Court of Appeals decision in LaBasse fashion that said advertising idea already covered trademark. Has language changed since then? And then, of course, we can... What difference does it make whether it was written? Well, it was written... The LaBasse policy included trademark because it did not have anything that said the trademarks were excluded. And here we have a policy that by including trade dress... Right. ...limits coverage to that part of trademark law. But the state of the law, when the ISO people, insurance service offices, sat down to draft this form of policy that Edwards purchased, the state of the law in California was clearly that trademark infringement claims were covered by the language misappropriation of an advertising idea. Now, if the ISO people really wanted to now say, you know, we don't like that decision, we want to by contract exclude trademark claims, you would think, Your Honor, that they would simply put in an exclusion that says trademark claims are not included. That's certainly one way they could do it. The other way they could do it is to say we will cover this part and thereby making it clear they don't cover the rest of trademark law. I realize that you can always do better drafting after a case arises than before, but why isn't it adequate? Because a trade dress claim is not the same thing as a trademark claim. There can be an add. It's a subset. It is a subset. Everything in trade dress law is part of trademark law, but not vice versa. But that is true. But a plaintiff can have a claim for trade dress infringement and not have a claim for trademark infringement. If some... Excuse me? A plaintiff can have a claim for trade dress infringement in a situation and not have a claim for trademark infringement. How is that? They are distinct. How is that? Cochran Gamble, Your Honor... Isn't trademark part of trade dress? Isn't that a species of... Isn't trade dress a species of trademark? They're both covered under the Lanham Act, Section 43A. I'm asking a question. Yes, Your Honor. They share the same principles of law. I'm asking a question. Yes. Isn't trade dress a species of trademark, a subset, a species, a kind of trademark, so that everything within trade dress is perforce inside of trademark law? Everything you say about trade dress necessarily applies to trademark, although not everything that applies to trademark necessarily applies to trade dress. As a legal matter, I think the answer is yes, but not as a factual matter. But not as a factual matter. And the example I was... What do you mean? Because Procter & Gamble could have a trade dress claim against another company that's making detergent that uses a bright orange bottle and a rainbow design for the label, but has a name other than Tide. Tide is the trademark, Your Honor. And if they use Tide, then Procter & Gamble would have a trademark infringement claim. But if they simply adopt the dress... You know, so the trademark consists of words and it consists of pictures and images, and it's a whole package. But a trademark has to be able to be described with distinct particularity. You have to be able to say the trademark is the name Nike and a swoosh of this design, and you draw a picture of it. There is no comparable registration for trade dress. You don't draw a picture of an orange bottle and the rainbow symbol and whatever else makes the Tide bottle so distinctive. When you're walking down the grocery store aisle, you see a bottle. You know it's Tide because it has the dress that has become familiar to consumers over many, many years. So there can be, as a factual matter, a trade dress claim when there's not a trademark claim. So there are two distinct theories of recovery. The law that applies to trade dress and trademark are comparable, if not the same. But factually, they are different claims. And so what you have in the form of policy that Edwards received was a policy that says you've got trade dress coverage. If you use trade dress in an advertisement like the newspaper ad I postulated for the laundry detergent that looks like Tide but doesn't use the Tide mark. But you also have coverage for use of another's advertising idea. And LaBasse fashioned in 1996 said that covers trademark infringement. That was the state of the law. And we know, Your Honor, a couple years later, 2001, when ISO really wanted to exclude trademark infringement coverage, they knew the language to use. Let me ask them what you are, what your argument, this argument hinges on, is our finding that even though it said trade dress, this, in fact, covered trademark infringement. Even though it said it covers trade dress, it really covers all trademarks. No. That has to be your argument. No. My argument is this use of another's advertising idea covers trademark infringement. Using F, 14F, the use of another's advertising idea in your advertisement. That's correct. Okay. That is, that's the basis for the trademark infringement coverage. Not G, infringing on another's copyright trade dress or slogan. That is correct. That is correct. And that is, was the holding of LaBasse fashioned. That trademark infringement was picked up. I didn't understand your answer. Did you remember that question? Let me, I thought I understood the question. Our contention is. This contention hinges on our finding that, in fact, advertising injury arising from misuse of a trademark is covered by the policy. Yes, absolutely. Even though you have another clause that says trade dress. That is correct. Okay. That is correct.  It's a big pill to swallow. Well, it's what the California Court of Appeal found in 1996. And that's still controlling law today. Trademarks advertising. Trademark is the basic function. One of the three basic functions of trademarks is advertising. That's what Judge Kroski found. That was the holding. That's what the reasonable expectation of insurance since 1996 has been based on. That's not a policy that had the specific coverage of trade dress. If you are right about that, then that's covered by G. Why do you need this other provision that has trade dress that mentions trade dress specifically? I'm not arguing. And we did not argue that. I'm asking a question. I don't contend the trademark infringement claims are covered by the coverage for trade dress claims. You're saying. You're not understanding my question. In fact, the one provision covers trademark. Which includes trade dress. Why do you need another provision of specificity about trade dress injury? Trade dress. Okay. I think I understand the question. Use of another's advertising. No, no, no. I don't think I need to. But we'll find out in one moment. If I did understand it. I am. I'm not contending that use of another's advertising idea covers a trade dress infringement claim. Pardon. I guess you didn't. Didn't understand the question. Right. I apologize, Your Honor. You have one provision that according to your construction includes advertising injury arising from trademark. Correct. Which is a broad concept. Correct. Includes trade dress. Why then would you need a second provision that specifically mentions trade dress? Okay. That provision would become superfluous. I just disagree with your assumption that trademark infringement includes trade dress infringement. Especially when the language is being parsed out the way it is in the policy. I guess that's where I can't. And perhaps my misunderstanding of your question is arising because I'm not accepting that assumption that the trademark infringement coverage under 14F includes trade dress coverage. I don't think it's superfluous. When you add trade dress infringement to language that the California Court of Appeal has found explicitly covers trademark infringement. Laboss was not a trade dress case and only found that misuse of another's advertising idea covered trademark infringement claims. So I'm not accepting that inclusion. So if we reject your argument that trade dress is in fact a species of trademark, it's a narrower concept, then you lose. Again. Well, you know, let's say that we disagree with you on that. That in fact, it turns out trade dress is a subset of trademark. Now, I can agree with that legal concept. But again, it's factually a different claim. And that I haven't heard you disagree with. I think you can have a trade dress infringement claim. It's not a trademark claim. That happens all the time. It happens all the time where people use people's packaging that looks like somebody else's package. But they don't use the marks that are associated with the packaging. But nonetheless, when somebody walks down an aisle in a market, a computer store, whatever, they think it's the same. That's not a trademark claim. That's a trade dress claim, exactly. That is not. That is not a trademark claim. It's covered by trademark law. Well, it's covered by Section 43A of the Lanham Act. I'm not disagreeing with that, Your Honor. But it is a different claim. It's a different claim. Because the definition of trademark and the definition of trade dress is different. It's different. Let me see if I understand your argument so that I can telegraph it to the other side so the other side can tell me where I'm wrong. I see you saying, as you look at number 14 that says, personal and advertising injury means injury, including consequential bodily injury, arising out of one or more of the following offenses, F, the use of another's advertising idea in your advertisement. Then you look over to number 7 under Judge Reel's conclusion. It says, the trademark infringement allegations in the IMAX action give rise to the potential for advertising injury coverage under the offense of use of another's advertising idea, which is IMAX. So you say, look at the boss. It says that's what trademark is. And on that sole number alone, number 7, we win. There's duty to defend under that. Is that pretty much the guts of your argument? Yes, Judge Straub. Thank you. The other side can tell me why that's wrong. And just to eliminate any factual dispute about it, I mean, contrary to what Mr. Nielsen has argued, at page 81 of the record, we're looking at paragraph 33 of the IMAX complaint against Edwards in the bankruptcy court, and it says, consumers who view defendants' advertisements which misuse the IMAX mark are falsely led to believe that they will have the IMAX experience, and on and on. And then IMAX goes on to allege that Edwards' inappropriate use of the IMAX mark will cause damage to their reputation and goodwill. That's will cause. I hear the other side saying, you don't have any injury yet. You just have an advertisement out there. You've got to have injury. And that misapprehends a big purpose of what a trademark is, Your Honor. It not only protects consumers from such standard experiences, but a trademark owner also has the right, one of the bundles of rights of a trademark owner, is to control absolutely who gets to use their mark and how they get to use it. Even if Edwards' films that they were exhibiting on their screens were even better than IMAX-quality films, the Louis Vuitton bag, let's say, is even better than the Louis Vuitton-quality bag, Louis Vuitton or IMAX still gets to decide who gets to use their mark. Why doesn't that drive Your Honor to the exclusion? Failure to conform? Well, it specifically takes it. Well, if there was damage, the damage arises out of people going there and being disappointed. Again, the Nestle case that we cited is right on point on this, Judge Kaczynski, and that is. . . Just give me an answer. No, you do not need to have poor-quality goods to have a trademark injury or to the trademark owner. But there was exclusion. Right, and the exclusion talks about the failure of the goods to conform to a quality level. So the exclusion talks about goods that don't meet the level of the advertising. But IMAX could have prevailed on its dilution claim or on its trademark infringement claim, even if they could never have proved that Edwards' film exhibitions were a lower quality than an IMAX film exhibition. There's just no doubt about that. One of the rights of a trademark owner is that they get to decide who gets to use their trademark. And if somebody uses it without their permission, they have damage. In fact, courts call that irreparable injury and base injunctions on that all the time. You don't have to show any actual injury in terms of dollars and cents to obtain an injunction against somebody who's infringing on your trademark, because the courts assume. . . But that's not what IMAX, in fact, sought. IMAX was, in fact, seeking damages, though, to its reputation and goodwill. It was not. . . From the showing of an inferior product. From the use. . . From the advertisements that use their name without their permission, allegedly. That was the allegation in the complaint. They said, as soon as you use an advertisement that has our name in it or one of our slogans in it, our goodwill, our reputation is damaged because that's not something that we want you to be doing. And that's the right of a trademark owner. There's no dispute that they owned the IMAX trademark or that that was invalid. In fact, it's an incontestable mark and that that was never an issue in the case below or here, certainly. So I do believe that unless this Court wants to find that LABAS can be disregarded, I think the reasonable expectation. . . And, again, that's the California law standard to measure whether or not there's a duty to defend and whether there's coverage for a particular matter. It's based on the objectively reasonable expectation of the insured in a given situation. And when Edwards buys this policy in 2000 and LABAS fashion says that if you're going to get sued for trademark infringement, you have coverage under that portion of your policy that talks about misappropriation of another's advertising idea. In Edwards' policy, it's a use of another's advertising idea. I think the objectively reasonable expectation of Edwards or any other insured is most certainly that they had trademark infringement coverage. Your Honor, in the few moments I have remaining, I'd like to make points about two California cases which I think address the concerns raised about the interpretation of the trade dress and use of an advertising idea issue. The first is that it's not only a matter of trademark law and, I think, common sense that trade dress is a subset of trademark in general, but specifically it's a point of California law that has been determined. And I'd refer the Court to the Aloha Pacific case, which was a case in which under one of the prior versions of the ISO forms that did cover trademark infringement and trade dress infringement under the LABAS reasoning, the policy had an exclusion for infringement of trademark. The policyholder was sued for infringement of trade dress and said that the exclusion didn't apply because it doesn't mention trade dress. I appreciate all of that. As I tried to indicate, I'm hung up on F. The use of another's advertising idea in your advertisement, which is exactly what happened here. And LABAS says a trademark serves three distinct purposes. Number three, it advertises the product. They got that in italics. A trademark is but a species of advertising. And at the end of that paragraph, moreover, as the trademark statute itself makes clear, the advertising of a good or service is one of the ways in which an act of infringement can occur. So I see Judge Reel is saying I conclude that you trespassed on F. I think it's using their advertising idea. And LABAS says that's an injury. Perhaps, Your Honor, if F stood alone in the policy and that was the only thing that was at issue. F's in the policy. If it stood alone in the policy. My point is that the policy needs to be read as a whole. And it was crucial. It was crucial to Justice Kroski's opinion in LABAS that the policy be read as a whole with each provision lending meaning to the others. In his own summary of his reasoning, after those many pages, including the comments that Your Honor just pointed out at page 565, Justice Kroski said, and this is the concluding paragraph, When read in light of the fact that a trademark infringement could reasonably be considered one example of A, and he emphasizes A, misappropriation, and taking into account that a trademark could reasonably be considered to be part of either an advertising idea or a style of doing business, it would appear objectively reasonable that advertising injury could now extend to the infringement of a trademark. The key here, Your Honor, is that a trademark is not normally, it is not primarily, and it is not always equivalent to an advertising idea. In the context of this particular policy, particularly in light of the fact that the policy expressly covers something that would normally be subsumed within the concept of trademark infringement under the very next list of offense, it would not be reasonable and a policyholder would not have a reasonable expectation that advertising idea would have the same meaning in this policy as the policyholder would have had if they purchased the form that was used and interpreted in the Lobos case. And that is the crux of our argument on that point, Your Honor. Very clear. Thank you. Thank you, Your Honor. Okay. The case is signed. The case is dismissed.
judges: Kozinski, Trott, Clifton